# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

The Bank of New York Mellon as Trustee for the Certificateholders CWMBS, Inc., CHL Mortgage Pass-through Trust 2005-HYB4, Mortgage Pass-through certificates, Series 2005-HYB4,

    Plaintiff

v.

Sunrise Ridge Master Homeowners Association; SFR Investments Pool 1, LLC; and Nevada Association Services, Inc.,

    Defendants

ALL OTHER CLAIMS

Case No. 2:17-cv-00214-JAD-EJY

**Order Granting in Part and Denying in Part Renewed Cross-Motions for Summary Judgment**

[ECF Nos. 70, 72]

    The Bank of New York Mellon brings this action to challenge the effect of the 2013 non-judicial foreclosure sale of a home on which it claims a deed of trust.[1] The bank sues the Sunrise Ridge Master Homeowners Association, which conducted the foreclosure sale, and foreclosure-sale purchaser SFR Investments Pool 1, LLC, seeking a declaration either that the sale was invalid or that SFR purchased the property subject to the bank's security interest. SFR countersues to quiet title in its own name.

    Both SFR and the bank now move for summary judgment on their quiet-title claims. Although the bank may be able to establish at trial that the deed of trust survived the foreclosure because its predecessor-in-interest's tender satisfied the superpriority portion of the lien, genuine

---

[1] ECF No. 1.

issues of fact preclude me from reaching that conclusion as a matter of law on this record. SFR has demonstrated the failure of two of the bank's subordinate quiet-title theories, however, so I grant partial summary judgment on them. And with the trial issues narrowed, I refer this case to a mandatory settlement conference with the magistrate judge.

**Factual and Procedural Background**

Patty Tan purchased the home at 3557 Chelsea Grove Street in Las Vegas, Nevada in 2005 with a loan from Universal American Mortgage Company, LLC, secured by a deed of trust that designated Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary.[2] MERS assigned that deed of trust "together with the note" to the Bank of New York Mellon in April 2012.[3] The home is located in the Sunrise Ridge common-interest community and subject to the declaration of covenants, conditions, and restrictions (CC&Rs) for the Sunrise Ridge Master Homeowners Association (the HOA).[4]

The Nevada Legislature gave homeowners' associations a superpriorty lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure to enforce such a lien.[5] When the assessments on the Tan home purportedly became delinquent, the HOA commenced non-judicial foreclosure proceedings on it under Chapter 116 in February 2013.[6]

---

[2] ECF No. 70-1 at 2–3 (original deed of trust).

[3] ECF No. 70-2 (assignment).

[4] ECF No. 70-3 (recorded HOA governing documents).

[5] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).

[6] ECF No. 70-4 (notice of lien for delinquent assessments); ECF No. 70-5 (notice of default and election to sell under homeowners association lien); ECF No. 70-7 (notice of foreclosure sale); and ECF No. 70-9 (foreclosure deed).

**A.      The HOA rejected the bank's tender and foreclosed on the property.**

When the bank's loan servicer, Bank of America, learned of the impending foreclosure, its counsel, the law firm of Miles, Bauer, Bergstrom & Winters, LLP, sent a letter to the HOA asking for "the HOA payoff ledger detailing the super-priority amount" of the HOA's lien "by providing a breakdown of nine (9) months of common HOA assessments in order for [Miles Bauer] to calculate the super priority amount."[7] Miles Bauer's records contain no response to that correspondence.[8] Miles Bauer consulted an account statement for a different property in Sunrise Ridge, surmised from it that the HOA assessments were $126.00 each quarter in 2011, and thus tendered nine months (three quarters) of those assessments to the HOA's foreclosure agent Nevada Association Services (NAS) in a $378 check.[9] In the letter to NAS that accompanied that check, Miles Bauer explained that the amount was an estimate of the superpriority portion of the HOA's lien:

> Despite your current refusal to provide HOA payoff ledgers, our client still wishes to make a good-faith attempt to fulfill [its] obligations as the 1st lienholder by tendering to NAS an accurate estimate of the Super-Priority Amount. This good-faith estimate is based on prior payoff ledgers provided by NAS to our firm regarding the same HOA in question. Based on the most recent HOA payoff ledger provided by NAS in regards to this particular HOA, we estimate 9 months of common HOA assessments to be $378.00.
>
> Thus, enclosed you will find a cashier's check made out to NEVADA ASSOCIATION SERVICES in the sum of $378.00. This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [the Bank's] Super-Priority Amount obligations towards the HOA in regards to

---
[7] ECF No. 70-6 at 15.
[8] *Id*. at 3, ¶ 7.
[9] *Id*.

3

the real property located at 3557 Chelsea Grove Street have now been "paid in full."[10]

Miles Bauer's records reflect that the check was rejected.[11] The HOA foreclosed on the property on September 20, 2013. SFR was the winning bidder at $5,000.[12]

**B.  The bank and SFR move for summary judgment to quiet title in their favor.**

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[13] The bank brings this action to save its deed of trust from extinguishment, pleading claims for quiet title and injunctive relief.[14] SFR counterclaims for quiet title and injunctive relief.[15]

Discovery has closed, and the bank moves for summary judgment in its favor.[16] SFR opposes the motion, but the HOA filed no response.[17] The bank offers three reasons why I must

---

[10] *Id*. at 12.

[11] ECF No. 70-9 at 2.

[12] *Id*.

[13] *SFR I*, 334 P.3d at 419.

[14] ECF No. 1. The bank sued SFR, the HOA, and the HOA's agent NAS, but NAS failed to answer or otherwise defend, and default was entered against it. *See* ECF No. 38.

[15] ECF No. 20 (SFR's counterclaim). SFR also asserted these claims as cross-claims against Tan, but Tan failed to answer or otherwise appear, and default was entered against her. ECF No. 54. To the extent that SFR now seeks summary judgment against Tan, *see* ECF No. 72 at 18, ¶ F, that relief is not available; SFR's proper remedy against a defaulted party is a default judgment.

[16] ECF No. 46 (discovery order); ECF No. 70. Although the Bank's complaint contains claims against the HOA and NAS for breach of NRS 116.113 and wrongful foreclosure, its motion ignores those claims and only addresses its quiet-title theories against SFR. Because no party addresses these claims, I don't either.

[17] ECF No. 77 (SFR's response).

4

hold that the HOA foreclosure sale did not extinguish its deed of trust (1) the tender satisfied the superpriority portion of the lien, so under the Nevada Supreme Court's ruling in *Bank of America v. SFR Investments Pool 1, LLC* (known as the *Diamond Spur* case),[18] SFR took the property subject to the deed of trust; (2) the HOA foreclosed only on the subpriority portion of the lien, so the deed of trust was unaffected; and (3) the sale must be set aside because the price was grossly inadequate and the sale was unfair and oppressive.[19] SFR also moves for summary judgment, arguing that the bank's claims are governed by a three-year statute of limitations, and because this action was filed more than three years after the foreclosure sale, it is time-barred. SFR also offers a handful of reasons why the foreclosure sale validly extinguished the bank's interest.[20] I find that genuine issues of material fact preclude a definitive declaration for either party. But I whittle down various issues to narrow the scope of trial, and I refer this case to the magistrate judge for a mandatory settlement conference.

## Discussion

**A.    Standards for cross-motions for summary judgment**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[21] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[22] If the moving party satisfies its

---

[18] *Bank of Amer. v. SFR Invs. Pool 1, LLC* ("*Diamond Spur*"), 427 P.3d 113 (Nev. 2018).
[19] ECF No. 70.
[20] ECF Nos. 72, 77.
[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[22] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

5

burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue of material fact for trial.[23]

Who bears the burden of proof on the factual issue in question is critical. When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[24] Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[25] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[26] The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[27]

---

[23] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[24] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

[25] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

[26] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[27] *Celotex*, 477 U.S. at 322.

**B.    The bank's claims are timely.**

Before I consider the merits of the parties' claims, I address SFR's threshold argument that the bank's claims must be dismissed as untimely.[28] SFR argues that the bank's claims are governed by the three-year limitations period in NRS 11.190(3)(a). The bank responds that its claims are timely because they are governed by a ten-year deadline or no deadline at all.[29] Both parties are wrong, but the bank's claims are nevertheless timely.

### *1.    Sorting the bank's claims*

The first step in assessing the timeliness of a claim is to identify its nature. To evaluate claims, "we must look at the substance of the claims, not just the labels used."[30] The bank pleads two causes of action against SFR. The first of these claims is labeled "Quiet Title/Declaratory Judgment Against All Defendants," and its purpose is to obtain a declaration "that the HOA sale did not extinguish the senior deed of trust."[31] This requested equitable relief makes the bank's claim the type of quiet-title claim recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[32] The resolution of such a claim is part of "[t]he long-standing and broad inherent

---

[28] ECF No. 72.

[29] ECF No. 76.

[30] *Nevada Power Co. v. Eighth Jud. Dist. Court of Nevada ex rel. Cty. of Clark*, 102 P.3d 578, 586 (Nev. 2004).

[31] ECF No. 1 at 6–10.

[32] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

7

power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[33]

The bank's other claim against SFR is its fourth cause of action, entitled "Injunctive Relief against SFR."[34] Injunctive relief is a remedy, not an independent cause of action. This remedy is only available for a meritorious substantive claim, and the only such claim that the bank pleads against SFR is the quiet-title claim. So I construe this final claim as a prayer for injunctive relief in conjunction with its equitable quiet-title claim and not as a separate cause of action.

### *2. The bank's quiet-title claim is subject to a four-year limitations period.*

SFR argues that the bank's claim is subject to the three-year statute of limitations in NRS 11.090(3)(a).[35] That statute governs actions "upon a liability created by statute, other than a penalty or forfeiture."[36] But the bank's claim is not an action upon a liability created by statute; it is an equitable action to determine adverse interests in real property, as codified in NRS 40.010.[37] Section 40.010 does not create liability, and a party cannot impose liability upon another through that statute. Rather, the statute allows for a proceeding to determine adverse claims to property. So NRS 11.090(3)(a) does not apply.

The bank takes the sweeping position that its claim is "not subject to a statute of limitations" based on the Nevada Supreme Court's opinion in *Facklam v. HSBC Bank*.[38] But

---

[33] *Id.* at 1112.

[34] ECF No. 1 at 13.

[35] *See* ECF No. 72 at 8–11.

[36] Nev. Rev. Stat. § 11.190(3)(a).

[37] *See Shadow Wood*, 366 P.3d at 1111 (recounting that "NRS 40.010 essentially codified the court's existing equity jurisprudence" (comma omitted)).

[38] ECF No. 76 at 3.

8

*Facklam* has no application here. In *Facklam*,[39] the Court merely held that non-judicial foreclosure actions are not subject to the statutes of limitation in NRS Chapter 11 because those time bars apply only to judicial actions, and a non-judicial foreclosure is not a judicial action.[40] So "lenders are not barred from foreclosing on mortgaged property merely because the statute of limitations for contractual remedies on the note has passed."[41] This case, however, is not a non-judicial foreclosure action—it's a lawsuit seeking equitable relief, so it falls under the "civil action" umbrella and is subject to the limitations periods in NRS Chapter 11.[42]

The bank argues alternatively that if a limitation period applies, its claim is governed by NRS § 106.240, which states that a lien created by a recorded deed of trust "shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged."[43] But this section "creates a conclusive presumption that a lien on real property is extinguished ten years after the debt becomes due," it is not a statute of limitation.[44] So the bank's claim is not governed by a ten-year deadline either.

With no squarely applicable limitations statute for the bank's claim, I am left with the catch-all four-year deadline in NRS 11.220, which states that "[a]n action for relief, not

---

[39] *Facklam v. HSBC Bank*, 401 P.3d 1068, 1071 (Nev. 2017).

[40] *Id*. at 1070.

[41] *Id*.

[42] *See* Nev. Rev. Stat. § 11.010 (providing that "Civil actions can only be commenced within the periods prescribed in this chapter, after the after the cause of action shall have accrued, except where a different limitation is prescribed by statute.").

[43] Nev. Rev. Stat. § 106.240.

[44] *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074, 1077 (Nev. 2001).

9

hereinbefore provided for, must be commenced within 4 years after the cause of action shall have accrued."[45] Because the foreclosure sale occurred on September 20, 2013, and this action was filed less than four years later on January 25, 2017, the bank's claim is timely. So, to the extent that SFR moves for summary judgment on the basis of timeliness, the motion is denied.

**C.  The bank has not established that it tendered the full superiority amount.**

Though its quiet-title claim is timely, the bank has not shown that it is entitled to summary judgment in its favor. The bank's lead summary-judgment argument is that its loan servicer's tender of $378 before the foreclosure sale satisfied the full superpriority amount, preserving its deed of trust under the Nevada Supreme Court's holding in *Diamond Spur*. In that case, the Nevada Supreme Court held that the tender of the full superpriority portion of an HOA's lien "cure[s] the default," so "the HOA's foreclosure on the entire lien result[s] in a void sale as to the superpriority portion." The net result of such a tender is that the "first deed of trust remain[s] after foreclosure" and the foreclosure-sale buyer purchases the property subject to the deed of trust.[46]

In *Diamond Spur*, Miles Bauer contacted the HOA to get clarification on the superpriority amount due for a particular home. Based on the information received from the HOA, it tendered nine months' worth of assessments to the HOA.[47] And just as in this case, the HOA rejected the payment and sold the property at foreclosure to SFR.[48] The Nevada Supreme Court explained that a valid tender typically requires payment in full, but for purposes of satisfying an HOA's superpriority lien and thus saving a deed of trust from extinguishment under

---

[45] Nev. Rev. Stat. §11.220.
[46] *Diamond Spur*, 427 P.3d at 121.
[47] *Id*. at 116.
[48] *Id*. at 116–17.

10

the version of Nevada's foreclosure statute that was in effect in 2013, the bank needed to pay the two components of the superpriority portion of the lien only: "charges for maintenance and nuisance abatement, and nine months of unpaid assessments."[49] Because the bank properly calculated nine months' worth of assessments based on the HOA's information, "and the HOA did not indicate that the property had any charges for maintenance or nuisance abatement," the Court found that, "[o]n the record presented, this was the full superpriority amount."[50]

Unlike the bank in *Diamond Spur*, however, plaintiff has not shown that it satisfied the full superpriority amount of the HOA's lien on this property. Because the HOA did not respond to Miles Bauer's request for account information, Miles Bauer could only estimate the two components of the superpriority portion of the lien.[51] The only information that Miles Bauer had was an account statement for another property within the Sunrise Ridge HOA that showed that the assessments on that property in 2010 were $132/quarter, and in 2011 were $126/quarter.[52] Even if I assume that the assessments remained $126/quarter in 2012 and 2013, and Miles Bauer thus accurately calculated the nine months (three quarters) of assessments using that figure ($126 x 3 = $378), the bank has not established that there were no charges for maintenance or nuisance abatement on this property that went unsatisfied by the $378 payment. The bank thus has not met its burden to show that it tendered the full superpriority portion of the lien. This genuine

---

[49] *Id.* (citing 116.3116(2) and *SFR I*, 334 P.3d at 412).

[50] *Id.* at 118.

[51] *Id.* at 117 ("[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments.").

[52] ECF No. 70-6 at 9.

11

issue of fact about whether there were charges for maintenance or nuisance abatement on this property precludes summary judgment in favor of any party.[53]

**D.  Issues of fact prevent summary judgment in favor of the bank on its theory that the HOA sold only the subpriority portion of the lien.**

The bank also claims that it is entitled to summary judgment in its favor because the HOA foreclosed on the subpriority portion of its lien only.[54] It suggests that statements made by loan servicer Bank of America in a 2011 mediation proceeding before the Nevada Real Estate Division demonstrate that this foreclosure sale was only on the subpriority portion of the HOA's lien. The bank's argument is far too undeveloped for me to apply estoppel or any other doctrine to so hold as a matter of law. At best, and if I generously presume that Bank of America's 2011 representations were related to this case, the bank has merely created an issue of fact because the foreclosure deed reflects that the HOA attempted to foreclose on the entire lien.[55]

**E.  SFR is entitled to summary judgment on the bank's *Shadow Canyon* theory.**

The parties cross-move for summary judgment on the bank's tertiary theory that the sale should be set aside because the sale price was grossly inadequate and the sale was plagued by fraud, unfairness, or oppression. The bank contends that the sale of the property for 3% of its value, plus the HOA's inclusion in its CC&Rs of a mortgage-protection clause, combine to compel the court to set aside the sale.[56] This price-plus-irregularities theory is grounded upon

---

[53] SFR argues in its own motion that, by operation of *SFR I* and deed recitals, the deed of trust was extinguished. *See* ECF No. 72 at 15–18. But a valid tender will trump those arguments. *See Diamond Spur*, 427 P.3d at 121.

[54] ECF No. 70 at 6–7.

[55] *See* ECF No. 70-9 at 2 (stating that the HOA "does hereby grant and convey, but without warranty expressed or implied . . . all its right, title[,] and interest in and to" the property).

[56] ECF No. 70 at 8–10.

12

the Nevada Supreme Court's holding in *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon* that, although inadequacy in price alone will not justify setting aside a foreclosure sale, "where the inadequacy of the price is great, a court may grant relief based on slight evidence of fraud, unfairness, or oppression" that affected the sale.[57] SFR argues that mortgage-protection clauses cannot prevent an HOA foreclosure sale under NRS Chapter 116 from extinguishing a deed of trust and that the bank has not shown that the sale price was inadequate for this "forced sale."[58]

Even if I were to agree with the bank that the foreclosure-sale price was grossly inadequate, it has failed to satisfy its burden on summary judgment because the record contains no evidence "that the sale was affected by fraud, unfairness, or oppression."[59] The sole irregularity that the bank points to is the HOA's mortgage-protection clause in its CC&Rs, which states that "no lien created under this Article 9, nor the enforcement of any provision of this Declaration shall defeat or render invalid the rights of the beneficiary under any Recorded first deed of trust."[60] But the Nevada Supreme Court has acknowledged the powerlessness of mortgage-protection clauses against the preclusive effect of NRS 116.3116. In *SFR I*, the Nevada Supreme Court found that such mortgage-protection clauses do "not affect NRS 116.3116(2)'s application" because Chapter 116's provisions, which give HOAs true superpriority liens, cannot be waived or varied.[61] The bank thus has no valid basis to show that

---

[57] *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 646–47 (Nev. 2017).
[58] ECF No. 77 at 25.
[59] *Id*. at 651.
[60] ECF No. 70-3 at 59, § 9.8.
[61] *SFR*, 334 P.3d at 419.

13

the mortgage-protection clause in these CC&Rs rose to the level of fraud, unfairness, or oppression that justifies setting aside the foreclosure sale. SFR is therefore entitled to summary judgment in its favor on this quiet-title theory.

**F.     The bank's due-process-violation theory fails as a matter of law.**

The bank's complaint contains a fourth quiet-title theory: "NRS 116's scheme of HOA super priority foreclosure" violated the bank's due-process rights.[62] Although the bank does not seek summary judgment on this theory, SFR does.[63]

For a couple of years, mortgage lenders caught in this foreclosure quagmire relied on a Ninth Circuit panel's 2016 ruling in *Bourne Valley Court Trust v. Wells Fargo Bank* that the version of Chapter 116 under which this foreclosure sale was conducted "facially violated mortgage lenders' constitutional due process rights."[64] But *Bourne Valley* assumed an interpretation of Chapter 116 that the Nevada Supreme Court has since rejected,[65] and the Ninth Circuit has expressly acknowledged that *Bourne Valley* is no longer good law.[66] It is now well-established that the version of Chapter 116 that existed at the time of this foreclosure sale did not violate mortgagees' due-process rights.[67] Indeed, the bank did not even offer an argument in

---

[62] ECF No. 1 at 8.

[63] *Compare* ECF No. 70 *with* ECF No. 72.

[64] *Bourne Valley Court Trust v. Wells Fargo Bank*, 832 F.3d 1154, 1160 (9th Cir. 2016).

[65] *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248, 1253 (Nev. 2018).

[66] *Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 624 (9th Cir. 2019).

[67] *See id.* ("we conclude that Nev. Rev. Stat. § 116.3116 et seq. is not facially unconstitutional on the basis of an impermissible opt-in notice scheme."). Because I grant summary judgment on this theory based on this reason, I do not reach SFR's additional state-actor and standing arguments. *See* ECF No. 72 at 12–13.

14

response to SFR's motion on this point.[68]  Because the portion of the bank's quiet-title claim based on this due-process-violation theory fails as a matter of law, I grant SFR's motion for summary judgment in its favor on this theory.

**Conclusion**

The net effect of these competing summary-judgment motions is that the bank's four quiet-title theories are narrowed down to two for trial: tender and subpriority-sale.  Because the parties likely know whether the bank will, in fact, be able to prove one of those theories at trial, I refer this case to the magistrate judge for a mandatory settlement conference.

IT IS THEREFORE ORDERED that Bank of New York Mellon's Renewed Motion for Summary Judgment **[ECF No. 70] is DENIED** based on genuine issues of fact;

IT IS FURTHER ORDERED that SFR Investments Pool 1, LLC's Renewed Motion for Summary Judgment **[ECF No. 72] is GRANTED in part and DENIED in part.**  SFR is entitled to partial summary judgment on the bank's price-plus-irregularities and due-process-violation theories; those theories will not proceed to trial.

IT IS FURTHER ORDERED that **this case is referred to the magistrate judge for a mandatory settlement conference.**  The parties' obligation to file their proposed joint pretrial order is tolled until ten days after the settlement conference.

Dated: September 4, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[68] *See* ECF No. 76 at 2, n.2.